**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

BARSHEEN LANG,

        Movant,

   v.

UNITED STATES OF AMERICA,

        Respondent.

CIVIL ACTION NO.: 4:21-cv-29

(Case No.: 4:19-cr-32)

## <u>O R D E R</u>

Movant Barsheen Lang ("Lang"), has filed an action pursuant to 28 U.S.C. § 2255, to set aside his conviction and sentence obtained in this Court in Case Number 4:19-cr-32. (Docs. 1, 3.) The Government has filed Responses in opposition to Lang's Motions. (Docs. 2, 6.) For the reasons stated by the Government and summarized below, the Court **DENIES** Lang's Motions and **DIRECTS** the Clerk of Court to enter the appropriate judgment and to **CLOSE** this case. Further, the Court **DENIES** Lang a Certificate of Appealability and *in forma pauperis* status on appeal.[1]

## BACKGROUND

The Grand Jury in this District charged Lang in a one-count indictment charging him with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1).[2] (Doc. 1.)

---

[1] The Magistrate Judge has issued a Report and Recommendation regarding Lang's Motion. (Doc. 8.) Given that this Order resolves Lang's Motions, the Court **REJECTS** the Report and Recommendation as **MOOT**. Lang shall not file any objections to the Report and Recommendation as it is now void, and this Order constitutes the final disposition of his Section 2255 action.

[2] The pertinent record documents in this case are filed on the docket of Lang's criminal case, <u>United States v. Lang</u>, 4:19-cr-32 (S.D. Ga. Feb. 6, 2019), and many are not included in his civil docket. Thus, for ease of reference and consistency, the Court cites to Langs's criminal docket in this Order.

On April 30, 2019, after engaging in a thorough change of plea colloquy with the Court, Lang pleaded guilty to that charge pursuant to a written plea agreement with the United States. (Docs. 27, 28, 29.)  Following a presentence investigation and report prepared by the United States Probation Office, (doc. 32), Lang appeared for a sentencing hearing on July 17, 2019.  (Doc. 36.) The Court sentenced Lang to 110 months' imprisonment and five years' supervised release. (Doc. 38.)  Lang subsequently filed a Motion to Vacate his Conviction pursuant to 28 U.S.C. § 2255.  (Doc. 39.)  The Government responded in opposition to Lang's Motion.  (Doc. 40.)  Lang then filed another Section 2255 Motion on December 2, 2019.  (Doc. 41.)  The Court then issued an Order directing the Government to file a response to the additional motion and ordering Lang to file a reply to the Government's response.  (Doc. 43.)  While the Government has filed a Response, (doc. 44), Lang has failed to file a reply.[3]

## DISCUSSION

The Court has reviewed the entirety of Lang's pleadings and construed his Section 2255 Motions liberally.  In these pleadings, Lang contends that his retained attorney, Mr. Charles Loncon, rendered ineffective assistance of counsel by advising Lang to plead guilty to the federal charge of possessing a firearm as a convicted felon after the Georgia Board of Pardons and Paroles had already revoked Lang's state parole based on the same conduct of illegally possessing a firearm.  (Doc. 3 at 3-6.)  Lang contends that the prior revocation of his parole rendered his subsequent federal prosecution a violation of the Fifth Amendment's Double Jeopardy clause. (Id.)  Therefore, he seeks to vacate his conviction in this case because they "were entered in Direct Violation of the 5th, 6th, and 14th Amendments of the U.S. Constitution."  (Id. at 6.)

---

[3]  Lang's failure to prosecute and follow the Court's Order due to his failure to file a reply as ordered by the Court provides another basis upon which the Court **DENIES** his Section 2255 Motions.

A movant is not entitled to habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). "The allegations must be factual and specific, not conclusory. Conclusory allegations are simply not enough to warrant a hearing." Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1061 (11th Cir. 2011) (citing San Martin v. McNeil, 633 F.3d 1257, 1271 (11th Cir. 2011)). For a movant proceeding *pro se*, the court will liberally construe the pleading, but he or she "must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). "An evidentiary hearing may be necessary where the material facts are in dispute, but a [movant] is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics." Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006) (citations omitted). Stated another way, "if a habeas petition does not allege enough specific facts, that if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing." Chavez, 647 F.3d at 1060 (citing Allen v. Sec'y Fla. Dep't of Corr., 611 F.3d 740, 763 (11th Cir. 2010)).

Further, because solemn representations at a plea hearing by a defendant, his attorney, and the prosecutor "carry a strong presumption of verity" and "constitute a formidable barrier in subsequent collateral proceedings," a movant's later "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . ." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977) (citing Machibroda v. United States, 368 U.S. 487, 495–96 (1962), and Price v. Johnston, 334 U.S. 266, 286–87 (1948)). "[I]f the Rule 11 plea–taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986). The statements of a defendant in open court are

presumed to be true.  See United States v. Gonzalez–Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  Thus, "[o]nly in the most extraordinary circumstances" will an evidentiary hearing be required to dispose of the later contention that statements made during the change of plea were untruthful." Blackledge, 431 U.S. at 80 n.19.

Lang's claims largely rely upon conclusory allegations that are refuted by the undisputed record evidence in this case.  Even if Lang's statements in his pleadings were true, he is not entitled to relief.  Thus, the Court need not hold an evidentiary hearing on his motions.  For the reasons set forth below, the Court denies Lang's motions.

## I.   LANG'S KNOWING, VOLUNTARY, AND INTELLIGENT GUILTY PLEA BARS HIS MOTIONS.

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances.  Bousley v. United States, 523 U.S. 614, 621 (1998).  A Section 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack."  United States v. Broce, 488 U.S. 563, 569 (1989) (finding constitutional that defendant could not raise double jeopardy claim on collateral attack following guilty plea).  Pertinently, a "knowing and voluntary guilty plea waives all non–jurisdictional, pre–plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea."  Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam).

The "careful and detailed" procedure the Court employed at the Rule 11 hearing entirely refutes these arguments.  Particularly given Lang's sworn statements during that hearing, he cannot credibly argue that his guilty plea was involuntary, unknowing, or unintelligent.  Stitzer, 785 F.2d at 1514 n.4.  Pertinently, through the Plea Agreement, Lang relayed to the Court his complete

satisfaction with his attorney's representation and confirmed that he had rendered faithful, skillful, and diligent assistance.  During the plea hearing, the Court went to great lengths to make certain that Lang's guilty plea was a product of his own free choice and made with full knowledge of the consequences of that plea.  He stated that no one had made or forced him to plead guilty or threatened, pressured, forced, or intimidated, him or someone close to him to get him to plead guilty, and no one had leaned on him, bribed, him, or promised him anything to induce his guilty plea.  Lang testified that his decision to plead guilty was voluntary, of his own free will, and knowing and that he was pleading guilty because he was in fact guilty of the charge against him. Having carefully observed and questioned Lang at length, the Court found Lang competent and able to make important decisions, and Lang agreed with that assessment.  Throughout the plea hearing, Lang was able to converse with the Court, recount personal information, and respond to all the Court's questions, and he repeatedly stated that he understood everything that the Court had said and done during the hearing and that he had no questions of the Court or his counsel.  Among other things, the Court apprised Lang of the rights he would waive if he pleaded guilty, the elements of the crimes with which he was charged, the minimum and maximum potential penalties and other consequences he faced if he pleaded guilty, including that a plea of guilty could result in the revocation of his parole or probation.  He testified throughout the hearing that he understood the Court's explanations.  Lang also testified that he had the assistance of counsel, that his attorney had met with him sufficiently and discussed the case with him including the discovery against him and his rights, that he was satisfied with his attorney's advice and assistance and that he had no complaints about his counsel.

Based on his sworn statements, the Court concluded that Lang knowingly and intelligently participated in the hearing and that his offer to plead guilty was voluntarily, knowingly, and

intelligently made, and Lang agreed with that assessment. At no point during his plea hearing did Lang indicate in any way that he did not understand the proceedings or the decision he was making. At no point did Lang indicate that he did not understand the wrongfulness of his actions or that his attorney had failed to fully investigate any issue. Given this extensive colloquy and Lang's sworn declarations, Lang cannot now be heard to argue that his plea was unknowing or involuntary. Blackledge, 431 U.S. at 73–74.

The Court must rely upon the truthfulness of Lang's prior sworn statements when ruling on his Section 2255 Motion. He cannot now come into this Court and argue in direct contradiction to this testimony. See Cruz v. United States, 188 F. App'x 908, 914 (11th Cir. 2006) (affirming dismissal of ineffective assistance claim where movant claimed counsel coerced her into pleading guilty based on misrepresented facts about the case and sentencing given the court's thorough explanation at plea hearing); United States v. Miley, 119 F. App'x 330, 332 (2d Cir. 2005) (holding that any prejudice from defense counsel's alleged misrepresentations was dispelled by the time movant pleaded guilty and acknowledged that no promises had, in fact, been made to him outside of the plea agreement). Thus, the Court finds that Lang's guilty plea was knowing, intelligent, and counseled and that it forecloses his attack on his conviction.

## II. LANG'S SECTION 2255 ARGUMENTS FAIL ON THE MERITS.

Regardless of whether Lang's claims are barred by his guilty plea, the Court still rejects them as entirely without merit.

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668 (1984). This right extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001). A defendant's guilty plea, appeal waiver, or

collateral attack waiver does not preclude an ineffective assistance of counsel claim premised on an involuntary and unintelligent plea. United States v. Puentes–Hurtado, 794 F.3d 1278, 1281, 1285 (11th Cir. 2005).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 466 U.S. at 686. A convicted defendant must meet two components to establish that counsel's assistance was so defective as to require reversal of a conviction or sentence: (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Id. at 685–86. "If a petitioner cannot satisfy one prong, we need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). Thus, if a defendant cannot show prejudice, the Court need not determine whether defendant's allegations show his counsel's performance fell below an objective standard of reasonableness.

The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686). "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (second alteration in original)). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case,

viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. Further, retrospective judicial scrutiny of counsel's performance "must be highly deferential" and must "eliminate the distorting effects of hindsight." Id. at 689. "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant could obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." LeCroy, 739 F.3d at 1312 (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). A reasonable probability of a different result "is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Lang has failed to demonstrate: (1) that Mr. Loncon's performance was deficient, i.e., the performance fell below an objective standard of reasonableness; or (2) that Lang suffered prejudice because of that deficient performance. Id. at 685–86. A Section 2255 movant asserting an ineffective assistance of counsel claim in the guilty plea process must establish that counsel's

performance was deficient (i.e., professionally unreasonable) and that the deficient performance "affected the outcome of the plea process." Hill, 474 U.S. at 59. In other words, to establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." Id.; see also Slicker v. Wainwright, 809 F.2d 768 (11th Cir. 1987) (to be entitled to an evidentiary hearing on whether petitioner's lawyer incorrectly advised petitioner that the negotiated plea agreement provided that he would serve less time than the maximum penalty, petitioner was required to establish that he would not have pleaded nolo contendere and would have insisted on going to trial had his lawyer not misled him with faulty information).

Further, a mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors, although required, is insufficient to establish prejudice. Rather, "the court must look to the totality of the objective factual circumstances surrounding the plea in order to determine whether there is a reasonable probability that the [movant] would in fact have insisted on trial." Suarez v. United States, No. 15–CR–20144, 2017 WL 3208725, at *5 (S.D. Fla. June 19, 2017), *report and recommendation adopted*, No. 16–24003–CIV, 2017 WL 3206328 (S.D. Fla. July 27, 2017) (citing Hill, 474 U.S. at 59; Hutchings v. United States, 618 F.3d 693, 697 (7th Cir. 2010)). This inquiry will often include an assessment of the strength of the prosecution's case, any available defenses the movant could have asserted at trial, the plea colloquy, and the movant's potential sentencing exposure. Id.

Lang contends that the Georgia Board of Pardons and Paroles' revocation of his state parole based on his illegal possession of a firearm barred his subsequent federal prosecution based on that same conduct under the Fifth Amendment's Double Jeopardy clause. (Doc. 3 at 3-6.) Thus, he argues that Mr. Loncon should not have advised him to plead guilty. Lang's argument is entirely

foreclosed by binding case law from the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit has held that "revocation of probation constitutes part of a defendant's original sentence and does not preclude subsequent prosecution for the [same] criminal conduct." United States v. Woods, 127 F.3d 990, 993 (11th Cir. 1997).  As such, "[a] term of parole replaces a portion of a sentence of imprisonment; it is part of the original sentence." Id. at 992 (citing U.S. Sentencing Guidelines Manual, Ch. 7, Pt. A, 2(b)).  Therefore, revocation of parole is effectively punishment for committing the original offense, not punishment for the underlying conduct forming the basis for the parole revocation.  Id. at 992-93.  In this respect, the Eleventh Circuit explained that "[a] parole revocation proceeding is a purely administrative action designed to determine whether a parolee has violated the conditions of his parole, not a proceeding designed to punish a criminal defendant for violation of a criminal law." Id. at 992 (citing United States v. Hanahan, 798 F.2d 187, 189 (7th Cir. 1986)).  Therefore, "revocation of [parole] constitutes part of a defendant's original sentence and does not preclude subsequent prosecution for the criminal conduct that gave rise to the [parole] revocation."  Id. at 993; See also, Johnson v. United States, 529 U.S. 694, 701 (2000) ("[P]ostrevocation penalties relate to the original offense" and are "part of the penalty for the initial offense. . . .  We therefore attribute postrevocation penalties to the original conviction."); United States v. Paul, 826 F. App'x 809, 814 (11th Cir. 2020) (rejecting double jeopardy challenge and explaining that "[p]unishment imposed upon the revocation of supervised release is a modification of the sentence imposed for the original offense; it is not punishment for the conduct that violated the terms of supervised release.").  Thus, if Lang had sought to have the Indictment dismissed or otherwise opposed the federal charge against him based on a theory that the prosecution violated his rights against double jeopardy, that argument would

have unquestionably failed.  As such, it was not objectively unreasonable for Mr. Loncon to advise Lang to plead guilty rather than mount a defense on this fatally flawed argument.

Moreover, Lang has failed to show any prejudice from Loncon's advice to plead guilty. Lang does not deny that the prosecution had more than ample evidence to prove that he unlawfully possessed a firearm.  The only any available defense he has offered, that his federal prosecution after the revocation of his state parole violated the double jeopardy clause, would have failed for the reasons explained above.   The Court conducted an extensive plea colloquy with Lang that solidified that he was pleading guilty knowingly, voluntarily, and intelligently.  Further, Lang reduced his advisory sentencing range under the United States Sentencing Guidelines through his acceptance of responsibility.   Thus, having reviewed the totality of the objective factual circumstances surrounding Lang's plea, the Court determines that there is not a reasonable probability that an objective defendant in Lang's position would have insisted on trial. Consequently, Lang has failed to show that Mr. Loncon's advice caused him any prejudice.

### III.  LANG IS NOT ENTITLED TO LEAVE TO APPEAL *IN FORMA PAUPERIS* OR A CERTIFICATE OF APPEALABILITY.

The Court also denies Lang leave to appeal *in forma pauperis* and a Certificate of Appealability.  Though Lang has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal.  Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "the district court <u>must</u> issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (Emphasis supplied); <u>see also</u> Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context

must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when she seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Lang, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller–El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."  Miller–El, 537 U.S. at 336.

Based on the above analysis of Lang' pleadings and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal.  Therefore, the Court **DENIES** the issuance of a Certificate of Appealability.  Lang is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts.  Furthermore, as there are no non–frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, the Court likewise **DENIES** Lang *in forma pauperis* status on appeal.

## CONCLUSION

For the above–stated reasons, the Court **DENIES** Lang's Motions to Vacate Judgement under 28 U.S.C. § 2255, (docs. 39, 41). Additionally, the Court **DENIES** Lang a Certificate of Appealability and *in forma pauperis* status on appeal.  Further, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**SO ORDERED**, this 20th day of May, 2022.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA